UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10204-GAO

ROBERT ZEMAN and JULIA ZEMAN,
Plaintiffs,

v.

ZIV WILLIAMS, M.D., EMAD ESKANDAR, M.D., HINA ALAM, SARY F. ARANKI, M.D.,
RHONDA BENTLEY-LEWIS, M.D., SUSAN BURNSIDE, RICHARD D'AUGUSTA,
ASHWIN DHARMADHIKARI, M.D., DEBORAH ECKER, MELISSA FRUMIN, M.D.,
ROBERT J. GLYNN, ELIZABETH L. HOHMANN, M.D., DAVID A. JONES, M.D.,
THOMAS KOLOKOTRONES, KEITH A. MARCOTTE, FRANCISCO MARTY, M.D.,
ELINOR A. MODY, M.D., JOAN RILEY, ANDREW P. SELWYN, ARTHUR C. WALTMAN,
M.D., SJIRK WESTRA, M.D., SEAN R. WILSON, M.D., and NEUROLOGIX, INC.,
Defendants.

OPINION AND ORDER
July 7, 2014

O'TOOLE, D.J.

This action arises out of an unsuccessful clinical trial of an innovative therapy to treat Young-Onset Parkinson's Disease. The plaintiffs, Robert Zeman and Julia Zeman, bring claims against Neurologix, Inc., the clinical trial sponsor, for negligence, breach of warranty, and loss of consortium. They allege that Neurologix negligently drafted and approved the informed consent form used in the clinical trial. They also claim that Neurologix negligently designed and manufactured the medical equipment which was used in the procedure. Neurologix has moved to dismiss the plaintiffs' claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

In addition, the plaintiffs claim that members of the Institutional Review Board at the Massachusetts General Hospital[1] ("IRB members") were negligent in drafting and approving the

---
[1] Each member of the Institutional Review Board is being sued in his or her individual capacity.

informed consent documents used to obtain Mr. Zeman's consent to participate in the clinical trial. The IRB members have also moved to dismiss the plaintiffs' negligence claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The central question presented by the motion is whether the IRB members owed the plaintiffs a legally cognizable duty of care under the common law of Massachusetts.

**I.      The Amended Complaint**

The Amended Complaint alleges the following facts. In late 2008, Mr. Zeman presented to Massachusetts General Hospital ("MGH") to participate in a clinical trial to treat Young-Onset Parkinson's Disease. The clinical study was a single blind placebo study, whereby only half of the study participants underwent the actual procedure. Mr. Zeman received the real therapy, not the placebo.

The clinical study involved a procedure called bilateral gene transfer, by which healthy genes were to be injected into both sides of the brain in the sub-thalamic nucleus using a viral vector. Together, the viral vector and healthy genes made up the study agent. Medtronic, Inc., previously dismissed from this action, designed and manufactured the experimental Acute Brain Infusion Delivery ("ABID") System used to introduce the study agent into Mr. Zeman's brain. The clinical study predicted that the injected healthy genes would produce an enzyme called glutanic acid decarboxylase, which in turn would produce a neurotransmitter, gamma-aminobutyric acid, a deficiency of which is common in Parkinson's patients. The clinical trial was being conducted under the Investigational Device Exemption ("IDE") to the normal Food and Drug Administration pre-market approval requirements.

Prior to enrolling in the clinical trial, Mr. Zeman received and signed an informed consent form. The Amended Complaint alleges that both Neurologix and the IRB members

"engaged in the drafting of and gave approval for" the informed consent form. (See Am. Compl. ¶¶ 125, 132 (dkt. no. 4).) They "knew or should have known that said document did not adequately and reasonably present the alternatives to and risks and potential consequences of the experiment." (Id. ¶¶ 128, 135.)

The procedure was performed on December 4, 2008, and Mr. Zeman became the first human subject to have a bilateral gene transfer. Unfortunately for Mr. Zeman, the procedure proved unsuccessful. Under the study design, the ABID System utilized two catheters to introduce the study agent into Mr. Zeman's brain. According to the procedure's protocol, one catheter was to be placed in the left side of the brain and one in the right side. In error, the operating surgeon placed both catheters in the left side of Mr. Zeman's brain, an error which caused him serious harm.

## II.     Standard of Review

To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When evaluating the plausibility of a plaintiff's claim, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Maldonado v. Fontanes, 568 F.3d 263, 266 (1st. Cir 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). The complaint must be supported by more than "mere conclusory statements," Iqbal, 556 U.S. at 678, but "detailed factual allegations" are not required. Twombly, 550 U.S. at 555.

**III.    Motion to Dismiss by Neurologix**

    A.    Count XI: Negligence (Informed Consent)

The plaintiffs allege that Neurologix negligently drafted and approved the informed consent form. Neurologix contends that this claim fails because the plaintiffs fail to establish that Neurologix owed Mr. Zeman a legally cognizable duty with respect to the content of the consent form. See Afarian v. Mass. Elec. Co., 866 N.E.2d 901, 905 (Mass. 2007) (stating that an "essential element of every negligence claim is the existence of a legal duty"). The existence of a legally cognizable duty is a question of law, and courts look to social values, customs, and policies to determine whether a legal duty exists. See Remy v. MacDonald, 801 N.E.2d 260, 262-63 (Mass. 2004); Tobin v. Norwood Country Club, Inc., 661 N.E.2d 627, 632-33 (Mass. 1996); Yakubowicz v. Paramount Pictures Corp., 536 N.E.2d 1067, 1070-71 (Mass. 1989).

The plaintiffs allege that Neurologix, as the sponsor of the clinical trial, had a duty to draft and approve the clinical trial protocol and informed consent form with reasonable care to ensure Mr. Zeman's safety. The plaintiffs allege further that Neurologix knew or should have known that the informed consent form was inadequate because the form did not advise Mr. Zeman of all reasonable risks and alternatives to the clinical procedure.

Federal regulations covering experimental clinical trials articulate a general policy to protect human subjects in clinical trials. See 45 C.F.R. § 46.101(e)-(f). [2] Under regulations issued by the Food and Drug Administration, participants in Investigational New Drug ("IND") clinical trials such as the one involved in this case are classified to include both "sponsors" and "investigators." An "investigator" is an "individual who actually conducts a clinical investigation

---

[2] A "subject" is "a human who participates in an investigation, either as a recipient of the investigational new drug or as a control. A subject may be a healthy human or a patient with a disease." 21 C.F.R. § 312.3(b).

4

(i.e., under whose immediate direction the investigational drug is administered or dispensed to a subject)." 21 C.F.R. § 312.3(b). The defendant Dr. Eskandar was the principal investigator in this case. A clinical trial "sponsor" is "a person who takes responsibility for and initiates a clinical investigation." Id. A sponsor "does not actually conduct the investigation unless the sponsor is a sponsor-investigator," and a sponsor-investigator must be an "individual." Id. Under the regulations the term "individual" refers to a human being, while the term "person" includes a "pharmaceutical company, governmental agency, academic institution, private organization, or other organization." Id. Here, Neurologix was a sponsor, and neither an investigator nor a sponsor-investigator.

Both the investigator and the sponsor have responsibilities under the regulations regarding obtaining a subject's informed consent. An investigator is responsible for the conduct of the trial according to the applicable protocol. 21 C.F.R. § 312.60. An investigator must "obtain the informed consent of each human subject to whom the drug is administered." Id. A sponsor is "responsible for selecting qualified investigators" and (among other things) "providing them with the information they need to conduct an investigation properly." Id. § 312.50.

It is a plausible understanding of these provisions that both investigators and sponsors have a role in the obtaining of informed consent from a clinical trial subject. It is the investigator who is responsible for actually interacting with the subject to obtain his consent, but the sponsor must "provid[e] . . . the information [the investigator] need[s]," id., to obtain a properly *informed* consent.

The sponsor's obligation to provide the necessary information in one sense is owed to the investigator, but it also may be owed to the subject. The subject obviously has a great stake in

5

whether the investigation is conducted "properly." That certainly includes the subject's being provided adequate information to give a properly informed consent. It is plausible that in a given case that will not happen unless the investigator obtaining the consent himself has adequate information bearing on the risks of the procedure. Under the regulations, the sponsor is obliged to provide the investigator sufficient information so that an informed consent is properly given by the subject.

I agree with Neurologix that the federal regulations do not themselves authorize a cause of action by a subject such as Mr. Zeman against a sponsor such as Neurologix. But the plaintiffs fashion their claim as one arising under the Massachusetts common law of torts. That there is no case law directly in point does not necessarily answer the question whether such a claim is viable.

Neurologix argues that the responsibility for obtaining an informed consent rests exclusively with the investigator. It is certainly true that the investigator has a major, if not the major, role in obtaining a properly informed consent. But that does not foreclose the possibility that some other persons, including particularly the trial's sponsor, might also have a responsibility to help assure that the investigator actually gets a properly informed consent. After all, even under the "learned intermediary" rule, a pharmaceutical company will not be held liable to injury to a patient *only if* it has given adequate information to the intermediary physician so the physician can adequately inform the patient. See Garside v. Osco Drug, Inc., 976 F.2d 77, 80-81 (1st Cir. 1992). See also MacDonald v. Orthos Pharm. Corp., 475 N.E.2d 65, 69-70 (Mass. 1985). If the investigator fails to inform a subject about some substantial risk because the sponsor has failed adequately to inform the investigator about the risk, the sponsor may be liable in tort.

6

The Amended Complaint alleges that Neurologix approved the protocol for the clinical trial, including the informed consent form, and that it knew or should have known that the form "did not adequately and reasonably present the alternatives to and risks and potential consequences of" the trial. It further enumerates specific omitted information. (Am. Compl. ¶ 135.) The claim that Neurologix negligently failed in a duty owed to Mr. Zeman is adequately pled under the Twombly and Iqbal standard. Whether the claim can be proved is a matter for another day.

### B. Count XII: Negligence (Product Liability)

The plaintiffs allege that Neurologix negligently designed and manufactured the ABID System, which includes the catheters used to inject the study agent into Mr. Zeman's brain. The allegations are, however, entirely general and conclusory. (Am. Compl. ¶¶ 142-144.) For example, it is alleged that the ABID System "was manufactured in violation of the Federal Food, Drug and Cosmetic Act ("Act") and regulations promulgated pursuant to said Act" (Am. Compl. ¶ 142), but there are no specifics about which provisions of the Act or regulations were violated or how. The plaintiffs similarly allege that Neurologix "negligently manufactured and/or designed the ABID System," but no details are alleged. Instead there is a catalog of summary and conclusory assertions, such as the allegation that Neurologix was negligent by "designing, manufacturing, and/or distributing a product in a defective condition." (Am. Compl. ¶ 144.a.) Such generalities do not come close to satisfying the Twombly-Iqbal standard.

Neurologix also argues that the plaintiffs' negligence claim for product liability is preempted by the Food, Drug, and Cosmetic Act ("FDCA") and its 1976 Medical Device Amendments ("MDA"). The MDA expressly preempts state requirements for medical devices "different from, or in addition to, any requirement applicable under this chapter to the device,

and . . . which relates to the safety or effectiveness of the device . . . ." 21 U.S.C. § 360k(a); see also Reigel v. Medtronic, Inc., 552 U.S. 312, 321 (2008). In general, state law negligence claims that "impose requirements [different from or in addition to the federal requirements] [are] preempted by federal requirements specific to a medical device." Reigel, 552 U.S. at 323-24 (internal quotation marks omitted). The plaintiffs respond that a state negligence claim is not preempted to the extent that it is premised on a violation of federal law because in such a case the state-imposed duties "parallel, rather than add to, federal requirements." Id. at 330 (internal quotations omitted) (citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 495 (1996)).

Because of the absence of specific allegations, it is impossible to tell whether the plaintiffs' product liability claim parallels federal law or not. It is not necessary to resolve the preemption question, however, because of the inadequacy of the pleading.

### C. Count XIII: Breach of Warranty

The plaintiffs also allege breach of warranty. The same pleading inadequacy exists as to this claim. All the complaint says is that the "ABID System was defective in design and/or manufacture, was unreasonably dangerous, and was in breach of . . . implied warranties." (Am. Compl. ¶ 150.) Without any allegation has to *how* the system was "defective in design and/or manufacture," the claim is not pled to the Twombly-Iqbal standard.

## IV. Motion to Dismiss by the IRB Members

The IRB members argue that they do not stand in such a relationship to a subject in a clinical trial such as Mr. Zeman as to give rise to a duty of care with respect to the obtaining of informed consent, and that consequently the complaint fails to state a claim against them. I agree.

The sponsor and investigator of a clinical trial both participate in the clinical treatment of the subject by designing and implementing the treatment protocol. The IRB, in contrast, does not

participate in either the design or implementation of the protocol. Its role is more like a regulatory body, than a treating medical professional or designer of the clinical trial protocol. .

The doctrine of informed consent has been developed in actions for malpractice by medical professionals who are treating a patient. See Harnish v. Children's Hosp. Med. Ctr., 439 N.E.2d 240 (1982). It has been applied where a treatment relationship has been established, most classically, but not necessarily exclusively, a doctor-patient relationship. Id. The Supreme Judicial Court has declined, however, to apply the doctrine to medical professionals who are only associated with the treatment in a tangential or limited way. So, for example, a neurosurgeon who was consulted but was not otherwise responsible for the patient's treatment was held outside the kind of relationship that would give rise to a duty to the patient regarding informed consent. Halley v. Birbiglia, 458 N.E.2d 710, 715-16 (Mass. 1983).

The IRB members stand outside any treatment relationship with Mr. Zeman. Under the Massachusetts cases, they do not have any duty to him (or any other specific patient) with respect to the obtaining of informed consent.

### V. Conclusion

Based on the reasons set forth above, Neurologix's Motion (dkt. no. 9) to Dismiss is GRANTED as to Counts XII and XIII, and those claims are DISMISSED. It is DENIED as to Counts XI and XIV (to the extent it rests on the claim in Count XI).

The IRB members' motion (dkt. no. 33) to dismiss the claims against them is GRANTED, and those claims, in Counts X and XIV, are DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge